Caleb R. Trotter (Cal. Bar No. 305195*)
Brandon C. Beyer (Minn. Bar. No. 0403249*)
PACIFIC LEGAL FOUNDATION
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
CTrotter@pacificlegal.org
BBeyer@pacificlegal.org
Telephone: (916) 419-7111
* *Pro Hac Vice Applications forthcoming*

Matthew G. Monforton (Mont. Bar No. 5245)
MONFORTON LAW OFFICES, PLLC
32 Kelly Court
Bozeman, MT 59718
matthewmonforton@yahoo.com
Telephone: (406) 570-2949

*Attorneys for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### HELENA DIVISION

| | |
|---|---|
| NIGHTINGALE COLLEGE LLC, d/b/a NIGHTINGALE EDUCATION GROUP; and CAROLYN PATCHETT, an individual,<br><br>              Plaintiffs,<br><br>    v.<br><br>SARAH SPANGLER, in her official capacity as Presiding Officer of the Montana Board of Nursing; and MISSY | Case No.: <u>CV-26-09-H-TJC</u><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

POORTENGA, in her official capacity as Executive Officer of the Montana Board of Nursing,

Defendants.

## INTRODUCTION

1. Plaintiff Nightingale College LLC, d/b/a Nightingale Education Group operates Nightingale College, an accredited, private post-secondary institution that provides nursing education nationwide through an innovative online model paired with locally arranged, in-person clinical training. Nightingale's programs are designed to expand access to the nursing profession for working adults, parents, and residents of rural communities—precisely the populations most affected by the nation's ongoing nursing shortage.

2. The Montana Board of Nursing, however, enforces a protectionist regulatory scheme that erects artificial barriers against out-of-state nursing programs while insulating in-state programs from competition. Under Montana law, nursing schools based in Montana receive blanket program approval for clinical placements. By contrast, nursing programs headquartered outside the state—no matter how well accredited or qualified—are subjected to a discretionary, case-by-case

2

approval process that Montana officials are free to grant or deny without objective standards.

3.    Worse still, Montana conditions approval for out-of-state programs on verification from directors of in-state nursing programs that a proposed clinical placement will not "displace" a Montana student. In practice, this gives in-state nursing schools a veto over their out-of-state competitors' access to Montana clinical sites—requiring newcomers to seek permission from the very incumbents they threaten to compete against. The Constitution does not permit states to fence off their markets by empowering favored in-state actors to block interstate competition.

4.    Plaintiff Carolyn Patchett is a student enrolled in Nightingale's Bachelor of Science in Nursing program. She is ready, willing, and able to complete her required clinical training at a Montana healthcare facility that has agreed to host her. But she is barred from doing so—not because of any deficiency in her education, qualifications, or supervision, and not because of any health or safety concern—solely because she attends an out-of-state school. As a result, Montana treats Ms. Patchett as a second-class student and denies her access to clinical

3

training opportunities that are freely available to students enrolled in Montana-based programs.

5. Montana's discriminatory scheme harms not only Nightingale and its students, but also the people of Montana. By restricting the ability of qualified nursing students from out-of-state programs to serve Montanans in clinical settings under supervision of licensed nurses, the state exacerbates its own nursing shortage—particularly in rural and underserved areas. The scheme also suppresses innovative educational models that could help alleviate these shortages, all for the sake of protecting in-state institutions from competition.

6. Plaintiffs Nightingale Education Group and Ms. Patchett bring this lawsuit to challenge Montana's unconstitutional barriers under the Dormant Commerce Clause and the Equal Protection Clause of the United States Constitution. Montana may regulate nursing education to protect public health and safety, but it may not do so through a discretionary, protectionist regime that favors in-state economic interests, empowers competitors to exclude rivals, and burdens interstate commerce without legitimate justification.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction under 28 U.S.C. §§ 1331 (federal question) and 1343(a)(3) (civil rights) because this action arises under the U.S. Constitution and 42 U.S.C. § 1983. This Court has authority to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

8.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred or will occur in this district.

## PARTIES

9.     Plaintiff Nightingale College LLC, d/b/a Nightingale Education Group, operates Nightingale College, a private, accredited institution of higher education headquartered in Salt Lake City, Utah. It offers online nursing degree programs to students across the United States, including residents of Montana. Nightingale has had, currently has, and expects to have future students who wish to complete clinical rotations in Montana.

10.     Plaintiff Carolyn Patchett is a United States citizen and a resident of Aurora, Colorado. She is currently enrolled in Nightingale's Bachelor of Science in Nursing program. She is ready, willing, and able

to complete her required clinical training at facilities within Montana to fulfill the requirements for graduation and subsequent licensure.

11.    Defendant Sarah Spangler is the Presiding Officer of the Montana Board of Nursing. In this role, she enforces Montana's regulations governing clinical placements for nursing students, including those enrolled in out-of-state programs. She is sued in her official capacity.

12.    Defendant Missy Poortenga is the Executive Officer of the Montana Board of Nursing. In this role, she enforces Montana's regulations governing clinical placements for nursing students, including those enrolled in out-of-state programs. She is sued in her official capacity.

## FACTUAL ALLEGATIONS

**Nightingale and Its Nursing Programs**

13.    Nightingale Education Group was founded to address the growing need for accessible nursing education. Nightingale College is accredited by the Northwest Commission on Colleges and Universities, a respected national accrediting agency. Its Bachelor of Science in Nursing program and Master of Science in Nursing program are accredited by the Commission on Collegiate Nursing Education. Its Practical Nurse

diploma program and Licensed Practical Nurse to Associate of Science in Nursing degree program are accredited by the National League for Nursing Commission for Nursing Education Accreditation.

14. Nightingale's academic model is designed for distance learners. Students complete their didactic coursework online, allowing them to balance education with work, family, and personal obligations. This model makes nursing education accessible to individuals with responsibilities beyond academics, as well as those in rural communities who cannot easily commute to a traditional brick-and-mortar campus.

15. Nightingale offers pre-licensure nursing programs, including associate and bachelor's degrees, which prepare students to become licensed practical nurses or registered nurses. It also offers graduate level programs, with specialties in nursing education, family nurse practitioner, and psychiatric mental health nurse practitioner.

16. Graduates of Nightingale's Bachelor of Science in Nursing program are eligible for licensure as a nurse in Montana and have obtained nursing licenses in Montana.

## Clinical Placements and Interstate Nursing Education

17. A cornerstone of nursing education is supervised field experience, commonly known as clinical placements or "clinicals." These experiences allow students to apply their knowledge in real-world healthcare settings under the supervision of qualified faculty or preceptors.

18. Over the typical course of a bachelor's nursing program, six different clinical experiences are needed for graduation. Occurring once per semester after students have completed foundational coursework, five 45-hour clinicals—typically taking place over one week—and a final 135-hour placement are required.

19. The six clinical placements begin by focusing on building core nursing skills and exposure to patient care environments, while later clinicals emphasize more advanced competencies, critical thinking, and clinical decision-making. As students progress through the program, clinical expectations increase in both complexity and responsibility.

20. To facilitate this training for its national student body, Nightingale partners with healthcare facilities across the country to secure clinical placements for its students near them. These partnerships

are essential for students to complete their degree requirements and become eligible for licensure without leaving their communities.

21. Without access to placements in Montana, Nightingale students must complete them elsewhere even if they reside in Montana.

**Montana's Protectionist Clinical Placement Scheme**

22. The Montana Board of Nursing, through its administrative rules, governs the placement of nursing students in clinical settings under the authority of the Montana Nurse Practice Act. Mont. Code Ann. § 37-8-101 *et seq*.

23. The Montana Board of Nursing has enacted a regulation, Admin. R. Mont. 24.159.608, which governs the placement of students from out-of-state nursing programs into Montana clinical settings.

*The Regulation Vests Unbounded Discretion in Montana Officials*

24. The regulation requires that any clinical placement for a student enrolled in an out-of-state program must receive prior approval from the Montana Board of Nursing or its executive director. Admin. R. Mont. 24.159.608(1).

25. To obtain this approval, an out-of-state program must submit a written request signed by the program director. This request must

include extensive documentation, such as proof of the program's unconditional board approval and accreditation, detailed descriptions of the preceptorship, and explicit plans for faculty supervision. Admin. R. Mont. 24.159.608(2).

26.    This approval process is redundant of the extensive vetting out-of-state programs already undergo to maintain their national and home-state credentials. In-state programs are not required to submit these requests for their clinical placements. Instead, Montana-based programs receive program-wide approval under Mont. Code Ann. §§ 37-8-301, 302, and Admin. R. Mont. §§ 24.159.604, 24.159.609, while Defendants subject out-of-state programs to a cycle of individual revetting of the same qualifications.

*Montana Conditions Approval on the Consent of In-State Competitors*

27.    The regulation requires verification from the "relevant directors of Montana programs" that the placement will not displace a Montana nursing student. Admin. R. Mont. 24.159.608(2)(h). This non-displacement requirement effectively grants existing in-state nursing programs a "competitor's veto."

28. Before an out-of-state school can compete for a clinical spot, it must effectively ask permission from its in-state competitors. If an in-state program claims the spot is needed for a student of a Montana nursing program, the out-of-state program's placement is blocked.

**The Scheme's Harm to Nightingale, Its Students, and the Public**

29. Montana's discriminatory regulations create significant, artificial barriers for Nightingale to serve students in Montana. The uncertainty of the case-by-case approval process and the burden of the non-displacement mandate make it logistically and financially difficult to operate in the state. Nightingale is forced to expend resources to navigate a bureaucratic maze that in-state programs are spared.

30. Given the uncertainty of whether a clinical placement will be approved in Montana—and thus facing the possibility that they will need to travel out of state for their clinicals—prospective students of Nightingale who reside in Montana are disincentivized to pursue their nursing degree at Nightingale. In-state programs do not face this competitive disadvantage.

31. Even though a Montana health care provider sought out Nightingale as a placement option for its students, Nightingale has so far

been unable to receive approval from Defendants and the Montana Board of Nursing to obtain clinical placements in Montana for its students. Nightingale officials have been informed that Board officials disfavor out-of-state programs, and other in-state programs have informed Nightingale officials that they are opposed to out-of-state programs like Nightingale securing clinical placements in Montana for their students.

32.   As a result, Nightingale students who reside in Montana have traditionally—and recently—traveled to Idaho and Wyoming to complete their clinical training.

33.   For those Nightingale students who reside outside of Montana but would like to complete their clinicals in Montana—like Ms. Patchett—Montana's discriminatory regulations make it less likely that they will be able to do so.

34.   The regulations also harm the public by worsening Montana's nursing shortage. The state has fewer nurses per capita than the national average, and nearly all of its counties are designated as Health Professional Shortage Areas. Montana's protectionist scheme inhibits willing and able students from becoming the nurses the state desperately needs, and it reduces healthcare options for Montana patients in the near

term by restricting students of out-of-state schools like Nightingale from serving Montana patients during their clinicals under proper supervision.

35. There is no legitimate health or safety justification for these discriminatory burdens. Nightingale's programs meet the same national accreditation standards as in-state programs. The students are subject to the same clinical supervision requirements. The sole purpose and effect of the regulations is to protect in-state nursing schools from competition.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### Violation of the Commerce Clause's Protection of Interstate Nursing Education

### (U.S. Const. art. I, § 8, cl. 3)

36. Plaintiffs reallege and incorporate by reference all allegations contained in paragraphs 1–35.

37. The Commerce Clause of the United States Constitution grants Congress the exclusive power to regulate interstate commerce. This express grant of authority implies a corresponding limitation on the power of states to enact laws or regulations that burden or discriminate

against interstate commerce. This "dormant" aspect of the Commerce Clause prohibits states from benefiting in-state economic interests by burdening out-of-state competitors.

38.    State laws that discriminate on their face against interstate commerce are *per se* invalid and may be upheld only if the State can demonstrate that the discrimination is narrowly tailored to advance a legitimate local purpose that cannot be achieved through reasonable, nondiscriminatory alternatives.

39.    Defendants' enforcement of Admin. R. Mont. 24.159.608 facially discriminates against interstate commerce by imposing burdensome mandates exclusively on out-of-state nursing education programs. The regulation explicitly targets out-of-state programs for differential treatment, requiring them to obtain discretionary approval through a standardless, case-by-case approval process governed by no objective criteria and subject to the unfettered discretion of Montana officials. They must also submit extensive documentation not required of in-state schools and prove that their presence will not displace in-state students to the satisfaction of their competitors.

40. In-state programs are categorically exempt from these barriers to entry. They are not required to seek Board approval for placements or verify non-displacement of competitors. This differential treatment provides an unfair economic advantage to in-state schools at the expense of out-of-state schools like Nightingale. It thereby confers a structural competitive advantage on in-state institutions solely by virtue of their geographic location.

41. Admin. R. Mont. 24.159.608 also directly regulates interstate commerce by reducing the ability of out-of-state programs to compete for students in Montana and by severely burdening the ability of out-of-state programs' students to obtain clinical placements in Montana. These burdens do not arise incidentally, but flow directly from a regulatory scheme that expressly disfavors out-of-state economic actors.

42. The regulatory scheme prevents Plaintiff Nightingale from effectively competing for access to Montana's nursing education and clinical placement market. It imposes unique administrative costs, creates an unpredictable regulatory environment, and disrupts its interstate business operations—barriers imposed solely on interstate competitors.

43.    Similarly, Ms. Patchett is denied the right to access local clinical training in Montana solely because she chose an out-of-state provider of educational services rather than because of any difference in program quality, supervision, or patient safety. She is compelled to navigate a protectionist scheme that treats her as a second-class student, thereby threatening her ability to graduate and enter the workforce and imposing burdens not borne by students at Montana institutions.

44.    This discriminatory scheme lacks any legitimate local purpose that cannot be adequately served by reasonable, nondiscriminatory alternatives. The State's interest in ensuring educational quality and public safety is achieved through uniform accreditation standards and licensure requirements. Montana already permits graduates of these same programs to obtain nursing licenses and treat patients in the state.

45.    The requirement to verify non-displacement of Montana students serves no purpose other than economic protectionism. Requiring out-of-state programs to obtain the consent of in-state competitors serves no health or safety function and exists solely to suppress competition.

46.   By enforcing a regulatory scheme that erects protectionist barriers against out-of-state educational institutions, Defendants deprive Nightingale of its constitutional right to engage in interstate commerce free from discriminatory state interference. This violation has caused, and continues to cause, irreparable injury to Plaintiff Nightingale's business operations and its ability to serve students within Montana. Absent injunctive relief, Plaintiffs will continue to suffer ongoing and prospective exclusion from interstate commerce.

47.   Defendants' policy likewise deprives Plaintiff Patchett of her constitutional right to engage in interstate commerce free from discriminatory state interference. This violation has caused, and continues to cause, irreparable injury to her ability to complete her clinical training in the state of her choice.

## SECOND CAUSE OF ACTION
## Violation of Equal Protection
## (U.S. Const. amend. XIV, § 1)

48.   Plaintiffs reallege and incorporate by reference all allegations contained in paragraphs 1–35.

49.   The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying any person the equal protection of the laws.

17

This mandate requires that the government treat similarly situated individuals alike and prohibits the creation of classifications that are not rationally related to a legitimate government interest. This includes prohibiting arbitrary classifications that burden one group while conferring advantages on another without a rational relationship to a legitimate governmental interest.

50.   Defendants' regulatory scheme creates an arbitrary and irrational classification between nursing students enrolled in in-state programs and those enrolled in out-of-state programs. It disadvantages students like Plaintiff Carolyn Patchett by subjecting them to a discretionary approval process and to the risk that their clinical placements will be blocked by objections from in-state nursing programs. Both groups of students are similarly situated in all material respects relevant to clinical training, licensure eligibility, and patient safety.

51.   Yet the challenged regulation subjects only the students of the out-of-state program, including Ms. Patchett, to the risk of having their clinical placements vetoed by the very competitors they seek to join in the market. This classification bears no rational relationship to any legitimate state interest, including public health, educational quality, or

patient safety. The restrictions apply regardless of the quality of the out-of-state program and regardless of whether in-state programs actually seek to use the same clinical placements. Accordingly, the discriminatory treatment of Plaintiffs violates the Equal Protection Clause.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the following relief:

1.     A declaratory judgment that Admin. R. Mont. 24.159.608, on its face and as applied to Plaintiffs, violates the Commerce Clause and Equal Protection Clause of the United States Constitution;

2.     A permanent injunction prohibiting Defendants, their officers, agents, employees, successors, and all persons acting in concert with them from enforcing the discriminatory provisions of Admin. R. Mont. 24.159.608;

3.     Nominal damages in the amount of $1.00 for each Plaintiff;

4.     An award of attorneys' fees, costs, and expenses in this action pursuant to 42 U.S.C. § 1988; and

5.     Such other relief as the Court deems just, necessary, or proper.

DATED: February 12, 2026.

Respectfully submitted,

MONFORTON LAW OFFICES, PLLC

  s/  Matthew G. Monforton 
Matthew G. Monforton
(Mont. Bar No. 5245)
32 Kelly Court
Bozeman, MT 59718
Telephone: (406) 570-2949
matthewmonforton@yahoo.com

PACIFIC LEGAL FOUNDATION

Brandon Beyer
Minn. Bar. No. 0403249*
3100 Clarendon Boulevard, Suite 1000 Arlington, VA 22201
Telephone: 202-888-6881
BBeyer@pacificlegal.org

Caleb R. Trotter
Cal. Bar No. 305195*
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
CTrotter@pacificlegal.org

* *Pro Hac Vice Applications forthcoming*

*Attorneys for Plaintiffs*